# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1638

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *
     v.                            *
                                   *
Michael Jackson,                   *
                                   *
            Appellant.             *

_____

No. 03-1723

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *
     v.                            *
                                   *
Fabian Jackson,                    *
                                   *
            Appellant.             *

Appeals from the United States
District Court for the
Western District of Missouri.

_____

Submitted: January 13, 2004

Filed:  April2 6, 2004

_____

Before BYE, LAY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted brothers Fabian and Michael Jackson of unlawfully possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court[1] sentenced Michael to 327 months' imprisonment to run consecutively with two previous state sentences. The same court sentenced Fabian to 295 months imprisonment. The Jacksons appeal their convictions and sentences. We affirm.

I. *Background*

On the morning of March 1, 2002, Missouri resident James Lee returned to his home to find a white Chevrolet pickup truck[2] backed up to his front door. Lee quickly realized that his home was being burglarized. Lee used his van to block the truck's escape path. When the men burglarizing the house saw Lee, one ran back into the house and the other ran to the truck and prepared to drive away. Lee saw his rifle sticking up in the floor board next to the driver of the truck. Fearing that the driver would hit his van, Lee pulled his vehicle back and allowed the truck to leave. The man in the truck drove around to the back of the house, and Lee observed him leave with another man in the truck. Lee immediately reported the burglary and identified the suspects as African-American males.

Deputy Jim Bank of the Clinton County, Missouri, Sheriff's Department immediately responded to the scene. Deputy Bank dispatched a description of the truck and the direction it was traveling. Sergeant Keith Trader of the Clay County, Missouri, Sheriff's Department and a Kearney Police Department unit encountered

_____

[1] The Honorable H. Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

[2] This truck was reported stolen earlier that day.

and began to pursue a truck matching that description as it sped past their position. The pursuit continued for some time with speeds in excess of ninety miles per hour. The pursuit ended when the truck left the highway, crossed two residential yards, and crashed into a fence.

Sergeant Trader saw the two suspects exit the truck, jump the fence, and run into a field. Sergeant Trader followed the men and immediately apprehended one suspect–identified as Fabian–who was hiding in a ditch near the crash site. The officers then began a search for the other occupant of the truck. They crossed a field and found the second suspect, Michael, lying in some woods across a road bordering the field. The officers also took Michael into custody. The police found a rifle and other personal property in the bed of the truck. Later, after observing Michael in a holding cell, Sergeant Trader identified Michael as the driver of the stolen truck based upon his earlier observation.

Fabian and Michael were each charged with one count for unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Because Michael had nine prior burglary convictions and Fabian had three burglary convictions and one assault conviction, the indictment also charged that the penalty-enhancement provisions of 18 U.S.C. § 924(e) applied to each defendant.

Michael moved to suppress the indictment, alleging that the police arrested him illegally because of his race and because Sergeant Trader's identification of him at the jail was impermissibly tainted. Following an evidentiary hearing on Michael's motion, the magistrate judge recommended its denial. The magistrate judge found that the police had probable cause to arrest Michael, who matched the description of the suspect involved in a high-speed chase and who was found hiding in a field a short distance from the crash site of the stolen white pickup truck. In addition, the magistrate judge found that Sergeant Trader's identification of Michael at the jail was not tainted by inordinate suggestibility because 1) the defense produced no evidence

that Michael was the only African American in the holding cell, and 2) Sergeant Trader had a sufficient opportunity to observe Michael during the chase and identified him within half an hour. The district court adopted the magistrate's report and recommendation.

The Jacksons were tried on August 26, 2002, and convicted the next day. Lee testified and identified Michael as the driver of the truck that he saw in his driveway. Lee also identified the rifle found in the pickup as his stolen weapon and identified other items recovered from the pickup as possessions stolen from his residence. The district court entered judgment on March 6, 2003. Both timely appealed.

## II. *Analysis*

Michael raises two issues and Fabian raises one in this consolidated appeal.

### A. *Sentencing Under U.S.S.G. § 5G1.3*

Michael first argues that the district court erred in running his federal sentence consecutively, rather than concurrently, with his two state-court sentences.[3] As to the Johnson County offense, Michael argues that this prior incident should have been taken into account in determining his base offense level. In doing so, he argues, U.S.S.G. § 5G1.3(b) required the court to run his federal sentence concurrent to his state sentences. As to the Clay County offense connected to this case, he argues that this was "fully taken into account" in calculating his sentence as evidenced in the presentence investigation report ("PSR"). We review the district court's interpretation of the guidelines de novo. *United States v. Smith*, 282 F.3d 1045, 1046 (8th Cir. 2002).

---

[3] Michael was convicted on two charges in Missouri state court prior to his conviction in this case. These convictions included a seven-year sentence for an automobile-theft offense that occurred on November 7, 2001, in Johnson County, Missouri, and a twenty-year conviction for the offense in Clay County, Missouri, involving the theft of the truck in this case.

Because Michael violated 18 U.S.C. § 922, the 18 U.S.C. § 924(e) enhancement applied.[4] Consequently, U.S.S.G. § 4B1.4(a) specifically provides that Michael qualifies as an "armed career criminal." Michael possessed the firearm in connection with a crime of violence[5] (burglary), and U.S.S.G. § 4B1.4(b)(3)(A) specifically sets his offense level at 34 with a criminal history category of VI under U.S.S.G. § 4B1.4(c)(2) (sentencing range of 262–327 months). Therefore, independent of his prior criminal conduct, Michael's possession of the gun in the connected burglary triggered this Sentencing Guidelines provision. The district court sentenced him to 327 months, which is within the Sentencing Guidelines range.

---

[4] 18 U.S.C. § 924(e) provides:

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

[5] 18 U.S.C. § 924(c)(3) provides:

For purposes of this subsection the term "crime of violence" means an offense that is a felony and–

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In addition, because Michael's base offense level was based only on his status as an armed career criminal and did not take into account the Johnson and Clay County crimes, U.S.S.G. § 5G1.3(b) does not apply. In a similar case, we stated:

> Sentencing courts must follow the procedures set out in section 5G1.3 and impose a sentence accordingly.We conclude the district court correctly determined subsection (b) did not apply. Although that subsection allows adjustment for any prison time already served as a result of conduct fully taken into account in determining the sentence for the instant offense, Lyons' base offense level was solely the result of his armed-career-criminal status, and the Nevada offenses were not considered in the offense-level calculation. In addition, applying subsection (b) would defeat the goal of reasonable incremental punishment for the instant offenses. The district court's application of subsection (c)–making Lyons' federal sentence concurrent with the remainder of his unexpired state sentence–achieved the desired result of giving him some sentencing credit for the overlap in his state and federal offense conduct, and also of imposing some incremental punishment for the instant offenses.

*United States v. Lyons*, 47 F.3d 309, 311 (8th Cir. 1995) (internal citations omitted); *accord United States v. Terry*, 305 F.3d 818, 825–826 (8th Cir. 2002). As such, because Michael had at least three prior felony offenses independent of the Johnson and Clay County offenses, the district court properly sentenced Michael pursuant to U.S.S.G. § 5G1.3(c), which allowed the court to sentence in any manner it deemed necessary "to achieve a reasonable punishment for the instant offense." We find no error in Michael's sentencing.

## B. *Motion to Suppress Identification*

Michael next argues that the district court erred in denying his motion to suppress Sergeant Trader's identification of him at the jail following his arrest. Michael argues that the identification procedure was 1) overly suggestive or unfair, and 2) created a substantial likelihood of irreparable misidentification. We review

federal constitutional questions, such as out-of-court identification challenges, de novo. *United States v. Johnson*, 56 F.3d 947, 953 (8th Cir. 1995).

In reviewing this claim, we first determine whether the identification procedure was impermissibly suggestive. "If it was, we must then determine whether, under the totality of the circumstances, the suggestive procedures created 'a very substantial likelihood of irreparable misidentification.'" *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)); *accord United States v. Donahue*, 948 F.2d 438, 441 (8th Cir. 1991). The central question is "whether under the 'totality of the circumstances' the identification was reliable" despite any suggestive or inappropriate pretrial identification techniques. *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *Mack v. Caspari*, 92 F.3d 637, 642–643 (8th Cir. 1996), *cert. denied*, 520 U.S. 1109 (1997). The relevant factors to "consider[ ] in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, 409 U.S. at 199–200; *accord Manson*, 432 U.S. at 114; *United States v. Tucker*, 169 F.3d 1115, 1117–1118 (8th Cir. 1999).

Michael argues that by moving to the second step of the inquiry, the district court impliedly determined that the identification in the jail cell was impermissibly suggestive. We disagree. The record shows that the district court made no finding on the "impermissibly suggestive" part of the inquiry (other than to note that there was no evidence that Michael was the only African American in the holding cell), and instead immediately moved to the second step of the analysis. At that step, the district court found that under the totality of the circumstances, Sergeant Trader's identification of Michael met the necessary factors for reliability suggested in *Neil*. Given that Sergeant Trader was nearly hit head-on by Michael and Fabian, that he correctly described what both men were wearing before they were apprehended, and

-7-

that he was present when Fabian and Michael were apprehended, we find that his identification of Michael approximately one-half hour later at the jail was reliable. Therefore, we affirm the district court's denial of Michael's motion to suppress.

## C. *Sufficiency of the Evidence*

In his one point on appeal, Fabian argues that the evidence is insufficient to support his conviction for unlawfully possessing a firearm. He asserts that the evidence did not show that he actually or constructively possessed the gun. We disagree.

We review the sufficiency of the evidence to sustain a conviction de novo. *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003). "In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." *United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000). "We will uphold a jury verdict if substantial evidence supports it." *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). Substantial evidence exists if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We do not overturn jury verdicts lightly, and "[r]eversal is appropriate only where a reasonable jury could not have found all of the elements of the offense beyond a reasonable doubt." *United States v. Armstrong*, 253 F.3d 335, 336 (8th Cir. 2001).

A conviction for violating § 922(g) may be based on constructive or joint possession of a firearm. *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993); *United States v. Woodall*, 938 F.2d 834, 837–838 (8th Cir. 1991). Constructive possession of a firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. *Woodall*, 938 F.2d at 838. Constructive possession exists where a person has both the power and the intention at a given time to exercise dominion or control over

a thing, either directly or through another person or persons. *United States v. Johnson*, 18 F.3d 641, 647 (8th Cir. 1994).

Constructive possession need not be proved by direct evidence, but rather may be premised upon circumstantial evidence, which we recognize as being "intrinsically as probative as direct evidence." *United States v. Patterson*, 886 F.2d 217, 219 (8th Cir. 1989) (citations omitted). However, constructive possession does not exist where the government fails to establish some nexus between a defendant and the contraband; mere physical proximity to the contraband is insufficient. *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983). We have specifically stated that mere presence as a passenger in a car from which the police recover contraband or weapons does not establish possession. *United States v. Flenoid*, 718 F.2d 867, 868 (8th Cir. 1983).

Here, the evidence is sufficient to support the jury's verdict. First, the evidence shows that Fabian was more than just an innocent passenger in the stolen truck. Rather, he exercised dominion over the vehicle by using the truck to store and transport the stolen items as well as to attempt to escape the police. In addition, the evidence shows that the homeowner, James Lee, saw his gun standing up in the cab of the truck when Michael drove from the front to the back of the house to pick up Fabian. Fabian asserts that the evidence does not establish that he knew Michael had the gun in the truck cab and that Michael could have placed the gun in the truck bed before Fabian entered the truck to escape. However, the police found the stolen items in the bed of the truck, thus indicating that both Michael and Fabian knew of the contents not only in the cab of the truck in which they were riding, but also in the bed of the truck where they both placed the stolen items.

In addition, Lee testified that the trigger lock had been removed from his gun after it was stolen. Because Michael was driving, the jury could have reasonably concluded that Fabian removed the trigger lock after Michael picked him up at the

back of the house. We find that the jury could have reasonably inferred through this circumstantial evidence that Fabian knew that the gun was in the truck–whether in the passenger compartment or in the bed–when the brothers left the house.

For the foregoing reasons, we affirm the Jacksons' convictions and sentences.

_____