# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1008

_____

United States of America

*Plaintiff - Appellee*

v.

Lionel Lee Dixon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: January 11, 2016
Filed: May 16, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Appellant Lionel Dixon pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to 48 months' imprisonment. Dixon appeals his sentence, arguing that the district court

---

[1] The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

erred in applying a four-level enhancement pursuant to USSG § 2K2.1(b)(6)(B). We affirm.

On May 21, 2014, Dixon was involved in a confrontation with a neighbor during which Dixon retrieved a pistol and threatened the neighbor with the weapon. After an unidentified observer placed an emergency phone call, police located and arrested Dixon and confiscated the firearm. An officer subsequently attempted to test-fire the pistol and discovered that it did not function due to an issue with the gun's firing mechanism.

Dixon pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At Dixon's sentencing hearing, the Government pursued a four-level enhancement under section 2K2.1(b)(6)(B) of the sentencing guidelines because Dixon had used the weapon in connection with a felony offense—the crime of "[e]xhibit[ing], in the presence of one or more persons, [a] weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030.1(4). Dixon objected to this enhancement. He argued that because the gun was not functional, it did not meet the Missouri statute's requirement that the weapon be "readily capable of lethal use." Although the court agreed with Dixon's reasoning, it found the argument foreclosed by previous decisions of the Missouri Supreme Court.

The district court's application of the enhancement resulted in a guidelines range of 57-71 months' imprisonment (as opposed to the 37-46 month range that would have applied without the enhancement). Acknowledging the circumstances of the offense and the fact that the pistol was not functional, the district court varied downward and sentenced Dixon to a term of 48 months' imprisonment. Dixon now appeals, renewing his argument that he did not violate section 571.030.1(4) of the Missouri statutes because a weapon must be functional in order to be "readily capable of lethal use" under the statute.

Section 2K2.1(b)(6)(B) of the Guidelines Manual provides that "[i]f the defendant [u]sed or possessed any firearm or ammunition in connection with another felony offense," then the court should increase the offense level by four levels. "In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony." *United States v. Littrell*, 557 F.3d 616, 617 (8th Cir. 2009) (quoting USSG § 2K2.1 cmt. n.14(A)). The legal conclusions a district court reaches in order to apply this enhancement are reviewed *de novo*, and the factual findings supporting the enhancement are reviewed for clear error. *United States v. Rodriguez*, 711 F.3d 928, 938 (8th Cir. 2013).

Missouri law prohibits as one of several "unlawful uses of weapons" the knowing "[e]xhibit[ion], in the presence of one or more persons, [of] any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 570.030.1(4). Violation of this provision constitutes a class D felony punishable by up to four years in prison. Mo. Rev. Stat. § 571.030.8. In assessing whether Dixon's conduct violated this provision, we defer to the Missouri Supreme Court's interpretation of the statute. *See Littrell*, 557 F.3d at 617-18 (looking to state supreme court decisions to determine whether defendant had committed a "felony offense" under USSG § 2K2.1(b)(6)(B)); *see also Johnson v. United States*, 559 U.S. 133, 138 (2010) (acknowledging that federal courts applying sentencing enhancements under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), are "bound by" state-court interpretations of state criminal statutes).

The Missouri Supreme Court has held that a weapon qualifies as "readily capable of lethal use" under section 571.030.1 even if it is not functional. In *State v. Wright*, a defendant challenged his conviction under the statute's prohibition against carrying a concealed weapon, arguing that the state had failed to provide evidence showing that the weapon in question was functional. 382 S.W.3d 902, 904-5 (Mo.

2012). The court rejected the defendant's argument. *Id.* at 905. It noted that some, but not all, of the "unlawful use of weapons" offenses listed in section 571.030.1 include a "special negative defense" that applies when a defendant is "transporting" a firearm that is "nonfunctioning." *Id.* at 904-05 "Providing for this special negative defense would be meaningless," the court explained, "if the State always had to prove the functionality of a firearm in its case-in-chief." *Id.* at 904. The court thus found "no requirement for a firearm to be loaded or operational for a defendant to be convicted under § 571.030.1" and affirmed the defendant's conviction for carrying a concealed weapon despite the fact that the state had not provided evidence that the gun in question was functional. *Id.* at 904-05.

The felony underlying Dixon's enhancement contains the same "readily capable of lethal use" language as the concealed-weapon offense considered by the Missouri Supreme Court in *Wright*. *See* Mo. Rev. Stat. § 570.030.1(4). Under Missouri law, therefore, the Government did not need to prove in its case in chief that Dixon's weapon was functional in order for the district court to find that Dixon possessed the weapon in connection with a violation of the statute. *See Wright*, 382 S.W.3d at 905. Nor does Missouri law provide a special negative defense where a firearm exhibited in an angry or threatening manner is not functional. *See* Mo. Rev. Stat. § 570.030.3. Following the Missouri Supreme Court's admonition not to render "meaningless" those provisions that do afford such a defense, *see Wright*, 382 S.W.3d at 904, we decline to read a non-functionality defense into the statute's prohibition against exhibiting a weapon in an angry or threatening manner. *See* Mo. Rev. Stat. § 570.030.1(4). As a result, we find that the district court did not err by applying the four-level enhancement.

For the foregoing reasons, we affirm.[2]

---

[2] Dixon does not challenge the substantive reasonableness of his sentence.

KELLY, Circuit Judge, concurring.

Wright held that "Section 571.030[] does not require the state to prove that a[] . . . firearm is 'functional,'" commenting that "the majority of cases have consistently held there is no requirement for a firearm to be loaded or operational for a defendant to be convicted." 382 S.W.3d at 904–05. Because I believe this holding does not require a firearm to be functional to support a conviction under § 571.030, I concur in the court's ruling in this case. I write separately, however, to express some concern with the reasoning of Wright as applied to the facts here. In Wright, the Supreme Court of Missouri was faced with the argument that "there was insufficient evidence introduced at trial to find" that the firearm in that case "was a 'functional lethal weapon.'" 382 S.W.3d at 905. In holding that such evidence was not required, the Supreme Court collapsed the concepts of "functional" and "readily capable of lethal use." Even if the State is not required to prove that the firearm is "functional," in the sense that it works as designed, the plain language of the statute does require proof that the firearm is "readily capable of lethal use." Whether the firearm is functional seems relevant to this inquiry—not necessarily dispositive, but relevant.

This distinction is illustrated by the special negative defense enumerated in § 571.030.3: that defense applies to transporting weapons "in a nonfunctioning *state*," as distinct from a nonfunctioning *weapon*. The latter suggests the firearm doesn't work as a firearm at all under any circumstances; the former suggests that an otherwise functioning firearm doesn't presently function simply because of the state it is in, perhaps because it is unloaded, purposely broken down into its parts, or otherwise disabled to prevent unexpected discharge during transportation. A firearm "in a nonfunctioning state" could under some circumstances be "readily capable of lethal use," but the special negative defense allows a defendant to avoid culpability if he can prove the weapon or firearm was being transported "in a nonfunctioning state" even if the firearm was otherwise "readily capable of lethal use."

-5-

That does not, however, answer the precise question posed by this case: whether the fact that a firearm is completely nonfunctioning is relevant to determining whether it is "readily capable of lethal use." If faced with this question on facts like those presented here—where all parties agree that Dixon's pistol was nonfunctioning—it seems possible that the Supreme Court of Missouri would limit the applicability of <u>Wright</u>, and would rather consider the functionality of the firearm in the context of the plain language of the statute, which asks whether the weapon exhibited was "readily capable of lethal use." Because the Missouri courts have not been presented with the opportunity to consider such a case, however, I concur.

_____