# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1236

_____

United States of America

*Plaintiff - Appellee*

v.

Sandra Lee Bart

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 14, 2017
Filed: April 24, 2018

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

After a five day trial, a jury found Sandra Bart guilty of conspiracy to commit visa fraud, 18 U.S.C. § 371; conspiracy to commit fraud in foreign labor contracting, 18 U.S.C. § 1349; and conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349. Bart's convictions arise from her role in a scheme to bring seasonal workers to the

United States through federal work visa programs and then require them to pay a recruitment fee, travel costs, and kickbacks on their wages. Bart appeals, claiming that the jury verdict was not supported by sufficient evidence and that the district court abused its discretion by denying her motions for an evidentiary hearing and new trial based on juror misconduct. We affirm.

**I.**

Sandra Bart operated Horizon Lawn Management ("Horizon"), a lawn care company located in Ohio. She began hiring through the federal H-2A and H-2B work visa programs in 2002 or 2003. These programs allow certain American employers to hire foreign workers to meet their seasonal labor needs if the employer demonstrates both that domestic workers are unavailable and that employing foreign workers will not depress domestic labor wages. The Department of Labor ("DOL"), the Department of Homeland Security ("DHS"), and the Department of State ("DOS") all oversee the H-visa programs and require employers to certify their compliance with program standards before approving employer participation. To participate in the H-2A program, an employer must certify the following to DOL and DHS under penalty of perjury: that it did not require compensation from prospective workers as a condition of employment, that it will pay transportation costs to bring the workers to the United States, that it will pay to house the workers in the United States, and that it will pay the wage rate set annually by DOL.[1]

Bart and Wilian Cabrera, a former H-2B worker from the Dominican Republic, formed Labor Listo in 2008. This organization sought to connect American employers with Dominican workers by means of the H-visa system. Bart and Cabrera agreed that Cabrera would recruit workers while Bart would recruit farmers. They

---

[1]Beginning in January 2009, employers were required to certify their compliance with these standards under penalty of perjury. A DOL investigator testified at trial, however, that the listed prohibitions have been in effect for decades. All certifications relevant in this case were filed between 2010 and 2015.

also agreed to charge prospective Dominican employees an initial fee of $500. From that they planned to deduct their legitimate costs, such as consulate fees and those for internet usage, and divide the remainder between them. Bart recorded an early version of this arrangement in a handwritten journal entry on October 13, 2008 titled "Meeting w/ Wilian." The entry includes the notes "Costs–pass on to applicant" and "Charge to applicant for Labor Listo services."[2] The entry shows a projected commission of $216 to Bart for each applicant.

In the summer of 2009 Bart contacted John Svihel, owner of Svihel Farm in Minnesota, and offered to supply Dominican H-2A workers for the 2010 season. Svihel agreed to the proposal and later testified that Bart told him a "do-gooder" group would pay for their airfare. DOL investigators determined that although Bart paid for the flights during the first year, workers had to return the cost to Cabrera, who then reimbursed Bart. After working with Labor Listo in 2010, Svihel told Bart he was no longer interested in employing H-2A workers because DOL had increased the required wage rate for the 2011 season. Bart then proposed that the 2011 workers give Svihel a kickback sufficient to make their effective wage equal to that in 2010. From then on, Cabrera consistently communicated to the Dominican workers that their actual wage rate would be lower than the DOL required wage rate. Worker testimony confirms that they did pay kickbacks to offset the increased amount. In 2012, Svihel began paying airfare costs for the workers, who reimbursed him later. He testified that this was Bart's idea.

In 2014, DOL received an anonymous complaint about Svihel Farm's labor practices. During the subsequent investigation, DOL learned about the illegal kickbacks, recruiting fees, and travel costs. On May 28, 2015, law enforcement

---

[2]To the extent that Bart claims the January 2009 rule change shields her from liability because she and Cabrera first discussed their plan in late October 2008, her argument is undermined by evidence that the parties implemented their plan with full knowledge of the change and after it became effective.

executed search warrants at the Horizon offices, the homes of Bart and Cabrera, and Svihel Farm. Investigators discovered handwritten notes by Bart and Cabrera, some of which referenced $216 payments owed to Bart by H-2A workers. According to Angela Olson, a DOS investigator who worked on Bart's case, the Horizon payroll records consistently reflected $216 deductions. Olson confirmed that in many cases, the collective deductions from worker paychecks were equal to the total cost of airfare reflected on Bart's credit card bills. The day after the searches, Bart deleted the entire Labor Listo email account.

From 2010 to 2015, Svihel had hired a private agency to submit required annual certifications to DOL and DHS, which included a certification that he or his agents paid the DOL wage rate and worker transportation fees, without collecting a recruiting fee. According to Lesli Downs, who submitted Svihel's certifications, Bart was aware of the program requirements and involved in the certification process. Downs submitted Svihel's paperwork to DOL by mail from 2010 to 2012 and by wire communication thereafter.

Cabrera testified that he and Bart knew their arrangement was illegal and that she had told him it was illegal. For that reason, he warned prospective Dominican workers that they could not discuss the initial fee with anyone. Patricia Sowards, an agent who filed Bart's own certifications with Horizon, testified that, on a scale of one to ten, Bart's knowledge about the requirements of the H-2A program was a ten.

Bart was charged in three conspiracy counts: conspiracy to commit visa fraud, 18 U.S.C. § 371; conspiracy to commit fraud in foreign labor contracting, § 1349; and conspiracy to commit mail and wire fraud, § 1349.[3] After the defense rested at trial, an Assistant United States Attorney notified the district court that on a courthouse

---

[3]Cabrera and Svihel both pled guilty to one conspiracy count and cooperated in Bart's prosecution.

elevator she had overheard a juror say the word "guilty." Although the defense sought to question the jury about the incident, the district court instead provided a curative instruction:

> Another issue came up and that is that it's come to the court's attention that some or one of the jurors may have been discussing the case last Thursday after the close of evidence here in the courthouse. As I have instructed you throughout the case, you are not to discuss the case with anyone, including your fellow jurors, until the case has been concluded and you have been instructed on the law. Now, I trust that you have followed that instruction, because the only indication we had was a mention of a word and there was no context to that word. And so, therefore, I trust that you have followed that instruction and will continue to do so until you begin your deliberations as a jury.

Bart then moved unsuccessfully for a new trial.

On August 8, 2016, the jury convicted Bart on all three conspiracy charges. The district court sentenced her to 60 months in prison. She appeals.

## II.

Bart claims that the evidence at trial was insufficient to prove each of the three conspiracy charges.

"We review challenges to the sufficiency of the evidence de novo." United States v. Johnson, 745 F.3d 866, 868–69 (8th Cir. 2014). In doing so, we view the evidence in the light most favorable to the guilty verdict, construing all reasonable inferences to support that verdict. United States v. Sullivan, 714 F.3d 1104, 1107 (8th Cir. 2013). "We will reverse a conviction only if no reasonable jury could have

found the defendant guilty beyond a reasonable doubt." United States v. Yang, 603 F.3d 1024, 1026 (8th Cir. 2010).

To prove a conspiracy to commit visa fraud under 18 U.S.C. § 371, the government must show that: (1) two or more people agreed to commit visa fraud; (2) the defendant voluntarily and intentionally joined the agreement at some point; (3) the defendant knew the purpose of the agreement; and (4) someone in the agreement knowingly acted in furtherance of the conspiracy. Model Crim. Jury Instr. 8th Cir. 5.06A–I (2014). The elements of visa fraud are: (1) a false statement; (2) under penalty of perjury; (3) made with knowledge that the statement was false; (4) the statement was made on an application, affidavit or other document required by immigration laws or regulations; and (5) the statement was material. 18 U.S.C. § 1546.

Viewed in the light most favorable to the government, the trial testimony was sufficient to demonstrate that Bart had agreed with Cabrera, and later Svihel, to bring H-2A workers to the U.S. and to require them to pay a recruitment fee, travel costs, and kickbacks on their wages. Bart had already been using the H-visa system for years and knew its legal requirements. She knew that the scheme would require that she, Cabrera, or Svihel file false certifications with DOL and DHS under penalty of perjury and that those false statements would materially affect agency decisions to certify Svihel Farm as an H-2A employer. Because they knew it was illegal, Cabrera and Bart both tried to prevent workers from discussing the arrangement with authorities. The conspirators carried out a number of overt acts in furtherance of their arrangement, including Svihel's actual submission of false certifications and deductions from workers' wages. We therefore conclude that the government presented sufficient evidence that Bart conspired to commit visa fraud.

To prove a conspiracy to commit fraud in foreign labor contracting under 18 U.S.C. § 1349, the government must prove: (1) two or more people agreed to commit

fraud in foreign labor contracting; (2) the defendant voluntarily and intentionally joined the agreement at some point; and (3) the defendant knew the purpose of the agreement. Model Crim. Jury Instr. 8th Cir. 5.06A–I (2014). The substantive offense of fraud in foreign labor contracting occurs when someone: (1) recruits, solicits, or hires a person outside the United States, or causes another person to do so, or attempts to do so; (2) does so by means of materially false or fraudulent pretenses, representations or promises regarding that employment; and (3) acts knowingly and with intent to defraud. 18 U.S.C. § 1351.

Both Cabrera and Svihel pled guilty to conspiracy to commit fraud in foreign labor contracting. Their testimony, viewed in the light most favorable to the government and in conjunction with the testimony of federal investigators, demonstrates that Bart intentionally, knowingly, and voluntarily agreed to participate in the conspiracy that led to those guilty pleas: recruiting Dominican workers through false representations to the United States government with the intent to collect fraudulent kickbacks. For this reason we conclude that the government presented sufficient evidence that Bart conspired to commit fraud in foreign labor contracting.

To prove a conspiracy to commit mail or wire fraud under 18 U.S.C. § 1349, the government must prove: (1) two or more people agreed to commit mail or wire fraud; (2) the defendant voluntarily and intentionally joined the agreement at some point; and (3) the defendant knew the purpose of the agreement. Model Crim. Jury Instr. 8th Cir. 5.06A–I (2014). The substantive offense of mail fraud occurs when someone: (1) voluntarily and intentionally devises or participates in a scheme to defraud or obtain money by means of material false representations or promises; (2) does so with the intent to defraud; and (3) uses, or causes to be used, the mail or a commercial interstate carrier to complete or attempt some essential step in the scheme. 18 U.S.C. § 1341. In the case of wire fraud, the person must use an interstate wire communication to carry out an essential step in the scheme. 18 U.S.C. § 1343.

A reasonable jury could have found that Bart conspired to commit mail or wire fraud for all the reasons stated. Bart knew and intended that someone would submit federal certifications across state lines by either the internet or a mail carrier. Svihel did both through his agent. We conclude that the government presented sufficient evidence that Bart conspired to commit mail or wire fraud.

**III.**

Finally, Bart claims that the district court should have granted her motion to question jurors individually at an evidentiary hearing as well as her motion for a new trial after an Assistant United States Attorney overheard a juror say the word "guilty," in the presence of other jurors, on an elevator.

"We review both the district court's handling of allegations of juror misconduct and its denial of the motion for a new trial for an abuse of discretion." United States v. Caldwell, 83 F.3d 954, 955 (8th Cir. 1996). "The granting of a new trial . . . is a remedy to be used only 'sparingly and with caution.'" United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004) (citation omitted). District courts have "'broad discretion' regarding whether to conduct evidentiary hearings regarding juror misconduct allegations." United States v. Muhammad, 819 F.3d 1056, 1061 (8th Cir. 2016) (citation omitted).

The district court did not abuse its discretion by denying Bart's motions. The elevator conversation occurred after all evidence had been presented but before closing arguments. The attorney who overheard the conversation only heard the word "guilty" without any context. Nothing in the record suggests that the jurors discussed the case or, if they did, that they considered improper evidence. The district court heard from both sides about the allegations of misconduct before deciding not to grant Bart's motions. Instead, it offered an appropriate curative instruction within its broad discretion.

**IV.**

Accordingly, the judgment of the district court is affirmed.

_____