# United States Court of Appeals
## For the Eighth Circuit

—————————————

No. 17-2189

—————————————

United States of America

*Plaintiff - Appellee*

v.

Nicholas Ryan Hemsher

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

—————————

Submitted: March 14, 2018
Filed: June 20, 2018

—————————

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

—————————

BEAM, Circuit Judge.

Nicholas Hemsher appeals following a jury conviction on firearms-related charges. He challenges the sufficiency of the evidence, the district court's[1] ruling on hearsay objections, and aspects of the court's sentencing calculation. We affirm.

_____

[1] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

## I. BACKGROUND

"We recite the facts in the light most favorable to the jury's verdict." United States v. Daniel, 887 F.3d 350, 353 (8th Cir. 2018) (quoting United States v. Payne-Owens, 845 F.3d 868, 870 n.2 (8th Cir. 2017)).

In June 2016, Hemsher and three co-defendants were indicted by a federal grand jury on firearm theft and possession charges. Hemsher was charged with possession of stolen firearms in violation of 18 U.S.C. § 922(j) and being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). The investigation leading to these indictments involved the gathering of information by law enforcement over a few-day period in February 2016.

In that month, Jack Hulscher reported to police that his home had been burglarized and that two gun safes, several guns, and ammunition were missing from the residence. After investigating, a Sioux Falls police officer determined that the safes were carried out of the home. The officer questioned Jack's son, Robert Hulscher, an initial co-defendant in this matter, who claimed at the time that he left the house around 11:30 a.m. and drove around the city for a couple hours. Robert Hulscher denied any involvement with the taking of the safes or the guns. A few days after the theft, officers returned to the Hulscher residence in response to a family dispute. When officers arrived they separated the parties. Jack Hulscher testified that the dispute began when Robert told him he might know where the stolen guns were. Jack Hulscher claimed that Robert said, "he knew a guy with a crew that did that kind of stuff," concerning the firearms. Separately, Robert Hulscher told officers that he took the safes that had been reported missing. His father believed that Robert was under the influence at the time of this questioning and Robert's statements were totally inconsistent with his previous denial. A detective then spoke to Robert a third time the day after the family dispute and Robert denied taking the guns as he did during his first questioning.

-2-

Around that time, a sheriff deputy arrested Nicolas Wingler, also an initial co-defendant, on an outstanding warrant. Wingler was in possession of a controlled substance and marijuana at the time. When interviewed, Wingler told detectives that there were about eight firearms in his apartment. Following Wingler's arrest, officers began surveillance of the apartment until a search warrant could be obtained with the information Wingler provided during the interview. During surveillance, the detectives observed a silver Camry parked in the driveway that left with two occupants. The Camry returned at 10:30 p.m. and the driver, identified as Hemsher, exited the vehicle and unsuccessfully attempted to enter Wingler's apartment.

Officers followed the Camry when it left the complex and briefly lost sight of the car, but noted that when they located the Camry again, they observed an unknown male walking near the location of Hemsher's tattoo parlor. A marked police car then pulled over the Camry. Hemsher was the driver and sole occupant at the time officers stopped the vehicle. Officers arrested Hemsher on an outstanding warrant and took him into custody, impounding the Camry for a later search. When the Camry was later searched, a detective found a gun on the floor of the driver's seat as well as ammunition in the trunk. Hemsher's girlfriend owned the Camry.

Detectives executed a search warrant at Wingler's home and at the time they did so they encountered Matthew Marshall, a third initial co-defendant, in the apartment house. Marshall had dropped a large black bag containing six firearms wrapped in a blanket outside Wingler's apartment. One additional firearm was located in Wingler's apartment.

At the trial of Hemsher and co-defendant Hulscher, Wingler and Marshall, who had pled guilty, testified as cooperating witnesses. Wingler testified that he knew Hemsher was in possession of firearms, that Hemsher wanted Wingler to sell them, and that the two texted regarding the number for sale. Wingler also testified that Hemsher had the guns laid out in the back of his tattoo shop and Wingler took them

from there back to his apartment. Wingler testified he knew they were stolen because Hemsher told Wingler a "buddy" stole them from his dad. Wingler additionally testified that he told Hemsher that Hemsher could come to his apartment to check on the guns and the two exchanged phone calls and text messages concerning how much to charge and what Wingler would receive in exchange for coordinating their sale.

Marshall testified that he observed guns at the tattoo shop and, later, in Wingler's living room closet. Marshall said he knew Wingler was going to sell the firearms and that Marshall moved the guns from the bed to the black bag Marshall had with him when the officers executed the warrant. When Hemsher came to Wingler's apartment to check on the guns, it was Marshall who encountered Hemsher. Marshall testified that when he arrived, Hemsher demanded his money or his firearms, which Marshall interpreted to mean that the firearms in the apartment belonged to Hemsher. During the visit someone knocked on the door and Marshall stated that Hemsher pointed a gun at Marshall's head until the person knocking left. Hemsher then left the apartment after demanding that Marshall either deliver the firearms or have Wingler contact him.

The government also called Hemsher's then-girlfriend to the stand. She testified she owned the Camry and that Hemsher had the Camry all day on February 22, 2016–the relevant day in this investigation. She testified she never saw anything illegal in her car that day.

All eight firearms recovered by law enforcement were received in evidence; the seven retrieved from Wingler's apartment and the one from the Camry. Jack Hulscher identified them as the guns stolen from his home. Wingler also testified that the firearms were the ones he received from Hemsher. Marshall additionally testified that they were the firearms he observed in Wingler's apartment.

Hemsher questioned his then-girlfriend and additional witnesses, all of whom testified either that they saw nothing illegal in the Camry on the day in question, or that they never saw Hemsher with a gun. Each witness testified to communicating with Hemsher after his arrest via phone or jail-approved text messaging. Hemsher informed one of the witnesses that Wingler had spoken to the police about the case and that Hemsher thought he was a "rat" and a "snitch" for doing so.

Co-defendant Robert Hulscher was acquitted on all counts. Hemsher was convicted on two counts: possessing a stolen firearm and being a felon in possession of a firearm. The district court enhanced Hemsher's sentence for the possession of eight firearms and additionally for possessing those firearms in connection with another felony offense given the evidence that Hemsher was trying to traffic them. Finally, the court also increased Hemsher's sentence for his obstructive conduct, as there was evidence that he told one of his witnesses to testify that she did not see anything illegal from the dates of February 20 through February 22, 2016, and additional evidence of obstruction in text messages sent by Hemsher from jail. The resulting Guidelines range was 120 to 150 months and the court imposed concurrent sentences at the bottom of the range–120 months on each count.

## II.   DISCUSSION

### A.   Sufficiency and Trial Objection

This court reviews sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences. United States v. Bart, 888 F.3d 374, 377-78 (8th Cir. 2018). Reversal is warranted only if no reasonable juror could find the defendant guilty beyond a reasonable doubt. Id. at 378. The general standard is that absent extraordinary circumstances, the reviewing court does not weigh the evidence or evaluate witness credibility when making sufficiency of the evidence determinations. United States

v. Crenshaw, 359 F.3d 977, 988 (8th Cir. 2004). Such extraordinary circumstances arise when the reviewing court determines no reasonable person could believe the testimony offered. Id. ("Although ordinarily witness credibility is left completely to the jury and is beyond appellate review, we must reverse a conviction if no reasonable person could believe the incriminating testimony.") (quoting United States v. Watson, 952 F.2d 982, 988 (8th Cir. 1991)).

On appeal Hemsher argues this case presents an extraordinary circumstance allowing this court to review credibility determinations. According to Hemsher, although normally a cooperating witness's testimony is not rendered insubstantial just because of its self-interest, here, there were two self-interested witnesses whose testimony was so full of material inconsistencies that there was no way the jury could rely on their testimony. Hemsher points out the many inconsistencies of Wingler and Marshall throughout their questioning by officers, and claims the accounts of Wingler and Marshall presented at trial were "impossible" in light of the defense's evidence; namely Hemsher's then-girlfriend and friends who testified they never saw Hemsher with a gun. As a result of these inconsistencies, Hemsher claims he was convicted based upon speculation and surmise.

We disagree. This case does not present the extraordinary circumstance where no reasonable person could believe the incriminating testimony. The witnesses were subject to thorough cross-examination regarding their testimony and their motives for providing testimony and there was more than sufficient evidence to convict Hemsher on the possession charges. Possession may be actual or constructive. United States v. Jackson, 365 F.3d 649, 655 (8th Cir. 2004). The evidence sufficiently connected Hemsher to the guns in Wingler's apartment as well as to the gun in the Camry, because the evidence showed he was the last person to occupy the Camry and to exercise control over the gun prior to it being located. Further, Hemsher coordinated the movement of the guns to Wingler's possession so as to facilitate their sale. See United States v. Howard, 413 F.3d 861, 864 (8th Cir. 2005) (determining the

government sufficiently connected Howard with stolen guns in part using circumstantial evidence). Further, there was circumstantial evidence that Hemsher knew the guns were stolen given his comment to Wingler that he got the guns from his "buddy" who stole them from his dad, the burglary victim who identified the recovered guns as his own. And, Marshall testified that Hemsher threatened him at gunpoint at Wingler's apartment when Hemsher arrived to get his money or his guns. Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence supporting Hemsher's conviction.

## B. Hearsay

The trial court's evidentiary rulings excluding evidence are reviewed for abuse of discretion unless an offer of proof has not been made, in which case they are reviewed only for plain error. United States v. DeMarce, 564 F.3d 989, 995 (8th Cir. 2009); United States v. Henley, 766 F.3d 893, 916 (8th Cir. 2014); Fed. R. Evid. 103(a)(2).

On appeal Hemsher challenges two evidentiary rulings made by the district court, both sustaining hearsay objections made by the government. First, during his case-in-chief, Hemsher recalled a detective to question him about his interview with Wingler to highlight that Wingler's account of events had changed from the officer's initial questioning of Wingler to Wingler's trial testimony. The district court sustained hearsay objections made by the government without a response from Hemsher. On appeal, for the first time, Hemsher argues the court erred in sustaining the government's objection because the questioning was presented for impeachment purposes admissible under Federal Rule of Evidence 613(b) (extrinsic evidence of a prior inconsistent statement). Hemsher also contends that failure to allow this questioning was necessarily prejudicial because Wingler's credibility was paramount in Hemsher's conviction. However, Hemsher did not make an offer of proof concerning either the substance or purpose of the testimony at trial and thus the

district court was never able to consider whether the posited testimony was proper impeachment of Wingler under Rule 613(b).

Rule 613(b) permits the admission of extrinsic evidence of a witness's prior inconsistent statements only where the witness is "given an opportunity to explain or deny" the statement and "the [opposite] party is given an opportunity to examine the witness." In this case, these Rule 613(b) preconditions were satisfied. Wingler *was* afforded an opportunity to explain or deny his statements during the government's case-in-chief, as he was questioned on cross-examination about statements he previously made to the detective during prior interviews and how those statements changed over time. Wingler claimed at trial he did not recall certain statements, or gave varying answers on the stand when presented with his inconsistencies. Based on Hemsher's first-time assertions on appeal, the inconsistencies he wanted to highlight by calling the detective himself involved whether or not Wingler saw guns at the tattoo shop and met Hemsher there to retrieve them, and how many guns Wingler said were kept at the tattoo shop. The government does not respond to Hemsher's Rule 613(b) argument, maintaining only that Hemsher sought to introduce Wingler's statements for the truth of the matter and that they were thus inadmissible hearsay. If we assume Hemsher offered the testimony of the detective to impeach Wingler by showing that Wingler made statements contrary to his trial testimony, the excluded evidence was not hearsay, and the trial court erred in excluding the extrinsic evidence on that basis. United States v. Eagle, 498 F.3d 885, 888 (8th Cir. 2007).

A mere showing of error does not, of course, entitle Hemsher to a new trial; the error must be plain. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). We conclude that the district court did not plainly err in excluding the detective's testimony since Hemsher failed to lay an evidentiary foundation by showing it to be Rule 613(b) evidence. Hemsher claims the error was clearly prejudicial because Wingler's testimony and credibility was key to the government's case. In the end,

however, *a fortiori*, the error was not plain because these inconsistencies had already been addressed with Wingler during the government's case on thorough cross-examination by two different counsel for the two defendants at trial. Accordingly, highlighting that testimony yet again with the defendant himself was redundant and the court's exclusion of that testimony did not affect Hemsher's substantial rights on these facts. Eagle, 498 F.3d at 889. Given the rigorous cross-examination that already took place, Wingler's credibility was an issue squarely before the jury at all times and the fact that Wingler changed his story on multiple occasions as well as his motivation for doing so was strenuously examined with him. Therefore, the error, if any, of excluding the purported extrinsic evidence was not plain.

As to Hemsher's second challenge to the exclusion of certain evidence on hearsay grounds, Hemsher also questioned Wingler's across-the-hall neighbor on the stand about what the neighbor heard the police officers say during the execution of the search warrant in an attempt, according to Hemsher, to bolster Marshall's testimony about his alleged rough treatment by the officers at the time of his arrest. These statements were hearsay and were properly excluded. Hearsay is not admissible unless one of several exceptions applies. Fed. R. Evid. 802. Hemsher made no offer of proof at trial, but on appeal, claims the testimony concerning what the officers purportedly stated during the execution of the warrant was admissible under Rule 803(2) as excited utterances. The "excited utterance" exception applies to any statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2); DeMarce, 564 F.3d at 997 ("The rationale of the excited utterance exception is that the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness." (quoting Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999))). The execution of a search warrant in the normal course of employment by trained officers does not constitute a startling event. However, even assuming the circumstances here were abnormally startling, Hemsher has not shown that the exclusion of this evidence affected his substantial rights. He claims the testimony

supported the credibility of Marshall, which he views as one of the most important issues at trial, but the jury had sufficient opportunity to evaluate Marshall's credibility throughout the trial. Because Hemsher has failed to show that the purported error affected his substantial rights, he has not satisfied the plain error standard.

## C.    Sentence

This court reviews a district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. United States v. Bates, 584 F.3d 1105, 1108 (8th Cir. 2009).

### 1.    U.S.S.G. § 2K2.1(b)(1)(B)

As to his sentence, Hemsher first argues the court erred in applying an enhancement under U.S.S.G. § 2K2.1(b)(1)(B) because the offense involved 8-24 firearms. The district court found that eight firearms were recovered by law enforcement and all eight were involved in Hemsher's offenses. Hemsher argues that this calculation is wrongly based on the self-serving, inconsistent testimony of Wingler himself, and that law enforcement never actually saw Hemsher enter Wingler's apartment that day, but rather only that he approached the building. However, as earlier noted, seven firearms attributed to Hemsher were located in Wingler's apartment and the eighth was located in the vehicle Hemsher was driving. There was evidence supporting the conclusion that law enforcement witnessed Hemsher approach Wingler's apartment complex on the day the firearms were recovered. There was additional testimony that Wingler obtained all seven firearms from Hemsher at the tattoo shop and that the two discussed the sale of those firearms via text. Too, Marshall testified about Hemsher's appearance at Wingler's apartment demanding his money and guns. There was thus circumstantial evidence supporting the enhancement. Under a clear error standard of review, we affirm the district court's findings in support of the enhancement.

## 2.     U.S.S.G. § 2K2.1(b)(6)(B)

Next, Hemsher claims the district court erred in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with another felony offense, here trafficking firearms. "In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm facilitated that other felony." United States v. Dixon, 822 F.3d 464, 465 (8th Cir. 2016) (quoting United States v. Littrell, 557 F.3d 616, 617 (8th Cir. 2009). The district court reasoned that Hemsher was convicted of possession of stolen firearms and that his possession offense was connected to trafficking of the stolen firearms. In light of the record evidence, the district court was referring to the witness testimony and evidence of Hemsher's intent and agreement to sell the firearms for profit (*i.e.*, a conspiracy or attempt to sell stolen firearms).

Hemsher's focus on appeal is on his claim that the application note to § 2K2.1(b)(6)(B) prohibits the use of trafficking as the other felony offense in this case because the Guidelines defines "[a]nother felony offense" as "any federal, state, or local offense, *other than the explosive or firearms possession or trafficking offense*, punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2K2.1 cmt. 14(C) (emphasis added). Hemsher further points out that application note 13(D) supports his argument that under the Guidelines, "another felony offense" must be something other than possession and trafficking offenses. Application note 13(D) states as much, he claims, by describing "another felony offense" as "*i.e.*, an offense other than a firearms possession or trafficking offense." U.S.S.G. § 2K2.1 cmt. 13(D). Reading these notes in tandem, Hemsher claims "the other felony offense" supporting the enhancement under § 2K2.1(b)(6)(B) has to be something other than a firearms possession or trafficking offense and thus on the facts present here, the

plain language of the Guidelines prohibits the enhancement of a possession offense with a trafficking offense.

While the two commentary notes, read together and highlighted by Hemsher might give pause to the discussion, we are bound to apply the plain language of application note 14(C), which this court has already stated narrows the scope only slightly, but determinatively, for our purposes.

> Application note 14(C) narrows the scope only slightly, by defining "another felony offense" to exclude "the explosive or firearms possession or trafficking offense." Importantly, application note 14(C) does not exclude "any," "an," or "a" firearms possession offense. The word "the" is a definite article commonly employed to refer to something specific. See United States v. I.L., 614 F.3d 817, 821 (8th Cir. 2010). The phrase "the . . . firearms possession . . . offense" in application note 14(C) most plainly refers to the underlying offense of conviction . . . . Thus, the plain language of application note 14(C) excludes only the underlying firearms possession offense of conviction from the definition of "another felony offense."

United States v. Jackson, 633 F.3d 703, 705-06 (8th Cir. 2011). Indeed, in United States v. Walker, 771 F.3d 449, 451-52 (8th Cir. 2014), we clarified this interpretation as congruent with the 2011 Guidelines amendments, which removed any doubt that "another felony offense" contemplated by the § 2K2.1(b)(6)(B) enhancement categorically removed firearm possession and trafficking offenses from the four-level enhancement altogether as Hemsher advocates here. Accordingly, the court did not err in applying an enhancement under § 2K2.1(b)(6)(B) after determining that Hemsher's firearms possession offense was connected to the other felony offense of firearms trafficking.

-12-

### 3.     U.S.S.G. § 3C1.1

Hemsher also argues that the district court erred in applying an obstruction of justice enhancement under U.S.S.G. § 3C1.1.  "We give great deference to a district court's decision to impose an obstruction of justice enhancement, reversing only when the district court's findings are insufficient."  United States v. Cunningham, 593 F.3d 726, 730 (8th Cir. 2010).  Covered conduct under § 3C1.1 includes threatening, intimidating, or otherwise unlawfully influencing or attempting to influence a witness, directly or indirectly.  U.S.S.G. § 3C1.1 cmt. n.4(A).  The district court sufficiently reviewed the text messages admitted at trial sent by Hemsher while in custody and was reasonable in concluding that he communicated with the recipients to threaten, intimidate or otherwise influence the witnesses, including the "snitch" he referenced.

### 4.     Procedural and Substantive Unreasonableness

As to Hemsher's claim that his sentence is procedurally and substantively unreasonable, a matter this court reviews under a deferential abuse-of-discretion standard, we find none.  United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).  The district court discussed its review of the presentence report and detailed Hemsher's criminal history and the resulting sentence of 120 months was at the bottom of the Guidelines range and is therefore presumptively reasonable.  United States v. Ewert, 828 F.3d 694, 698 (8th Cir. 2016).  Though presumptively reasonable, Hemsher argues the great disparity between his sentence and those of the cooperating co-defendants is evidence that his sentence is unreasonable.  18 U.S.C. § 3553(a)(6) (instructing sentencing courts to take into account the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct).

-13-

Citing United States v. Lazenby, 439 F.3d 928 (8th Cir. 2006), Hemsher claims his own sentence of 120 months is wholly unreasonable when viewed in light of the six- and seven-month respective sentences imposed on co-defendants Marshall and Wingler. However, Hemsher's argument founders on the mistaken premise that the statutory direction to avoid unwarranted sentencing disparities among defendants refers to differences among co-conspirators. It does not. United States v. Pierre, 870 F.3d 845, 850 (8th Cir. 2017). Additionally, we have limited the Lazenby decision to the "unusual circumstances" presented in that case, which included "a consolidated appeal involving both conspirators that permitted a remand for resentencing of both parties." United States v. Fry, 792 F.3d 884, 892-93 (8th Cir. 2015). This case does not present such a unique circumstance. And, in any event, any disparity in sentencing among Hemsher and the noted co-defendants here was warranted. These defendants were dissimilar. Wingler and Marshall pleaded guilty, accepted responsibility, and cooperated with the government, all of which would have warranted favorable consideration in their sentencing. Id. at 893. The district court reasonably arrived at Hemsher's sentence.

## III.   CONCLUSION

For the reasons stated herein, we affirm.

_____